## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Howard W. Amos, | Case No. 22-cv-2108 (JWB/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Ryan Kelly and Kurtis Schoonover, *sued in their individual and official capacities*, | |
| Defendants. | |

On September 2, 2016, Howard Amos led police on a high-speed chase through a residential area, killing an innocent bystander before crashing his vehicle. Undeterred, Mr. Amos forced his way into another vehicle—this one occupied by an adult driver and children. As Mr. Amos nearly took control of this vehicle (and its occupants), Minneapolis Police Officer Ryan Kelly stopped him through flashlight strikes to the head—force only used after lesser force was ineffective at neutralizing Mr. Amos. Once removed from the vehicle he tried to steal, Mr. Amos continued to struggle and resist arrest until fully handcuffed.

Mr. Amos subsequently sued Officer Kelly and Minneapolis Police Sergeant Kurtis Schoonover. Mr. Amos claims that Officer Kelly used constitutionally excessive force, and that both Defendants failed to intervene as Mr. Amos was subjected to excessive force. This matter is before the Court on Defendants' Amended Motion for Summary Judgment. (Docs. 91 (motion) and 93 (memorandum).) The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. §

636 and District of Minnesota Local Rule 72.1. For the reasons explained below, the Court recommends that Defendants' Amended Motion for Summary Judgment be granted (Doc. 91) and all claims against Defendants Ryan Kelly and Kurtis Schoonover be dismissed.

## BACKGROUND

On August 26, 2022, Howard Amos filed his pro se Complaint under 42 U.S.C. § 1983, against Defendants City of Minneapolis, Ryan Miller, Ryan Kelly, Kurtis Schoonover, Peng Moua, Dirk Spee, and Chad Conner, as well as North Memorial Medical Center, Jane and John Doe, both of whom Mr. Amos alleges work for North Memorial Medical Center (collectively "North Memorial Defendants"). (*See generally* Doc. 1.) On February 26, 2024, the Court dismissed Defendants Ryan Miller, Chad Conner, Peng Moua, Dirk Spee, and the City of Minneapolis for failure to effect timely service under Federal Rule of Civil Procedure 4(m). (*See generally* Doc. 78.) The Court also dismissed all claims against the North Memorial Defendants for failure to prosecute under Federal Rule of Civil Procedure 41(b). (*See generally id.*) Finally, the Court dismissed Mr. Amos's state law claims for assault and battery under Minnesota Statute § 541.07. (*See generally id.*) As a result, the remaining Defendants at the time of this writing are Minneapolis Police Officer Ryan Kelly and Sergeant Kurtis Schoonover.

Mr. Amos's claims stem from his arrest on September 2, 2016, by Officer Kelly and others. (Doc. 1 ¶ 8.) Mr. Amos claims that Defendants Kelly and Schoonover violated his Eighth Amendment rights when they used "physical force against [him] without need or provocation, or in failing to intervene to prevent misuse of force" all of which he alleges was done "maliciously and sadistically and constituted cruel and unusual punishment." (*Id*.

2

¶ 9.) In support of their summary judgment motion, Defendants Kelly and Schoonover argue that Mr. Amos cannot establish any constitutional violation, and even if there were constitutional violations, they would still be entitled to qualified immunity.[1]

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is material if it "might affect the outcome of the suit." *Id*. at 248. And a genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When deciding a motion for summary judgment, a court "must view the evidence 'in the light most favorable to the opposing party,'" *Tolan v. Cotton*, 572 U.S.

---

[1] Defendants also argue they are entitled to official immunity from Mr. Amos's state law negligence claim. But the only negligence claim discernible to the Court in Mr. Amos's Complaint was lodged against North Memorial Defendants who have already been dismissed from this case. (*See generally* Docs. 1, 78.) Because no negligence claim remains at issue, the Court does not address the claim in this Report and Recommendation. Even if a state law negligence claim was asserted against either of the remaining Defendants, the Court would recommend declining to exercise supplemental jurisdiction and dismissing the claim without prejudice based on its recommendation that all federal claims over which the Court has original jurisdiction be dismissed. 28 U.S.C. § 1367(c)(3); *see also Barstad v. Murray Cty.*, 420 F.3d 880, 888 (8th Cir. 2005) ("A federal district court has discretion to decline jurisdiction if it has 'dismissed all claims over which it has original jurisdiction.'").

650, 657 (2014) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970)), drawing "all justifiable inferences" in the opposing party's favor, *Tolan*, 572 U.S. at 651 (quoting *Anderson*, 477 U.S. at 255) (further citations omitted)). But a court should not accept a party's unsupported allegations that are "contradicted by the record, so that no reasonable jury could believe" them. *Edwards v. Byrd*, 750 F.3d 728, 733 (8th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## ANALYSIS

**I. DEFENDANTS KELLY AND SCHOONOVER ARE ENTITLED TO SUMMARY JUDGMENT ON MR. AMOS'S CONSTITUTIONAL CLAIMS.**

**A. The Eighth Amendment does not apply to Mr. Amos's claims of excessive force during his arrest.**

Mr. Amos has alleged that Defendants' use of excessive force and failure to intervene in others' use of excessive force during his arrest violated his Eighth Amendment rights against "cruel and punishment[.]" (Doc. 1 ¶ 9.) He also asserts in his Complaint that he "was not incarcerated at the time during the event described in this [C]omplaint." (*Id.* ¶ 3.) Defendants have moved for summary judgment on Mr. Amos's Eighth Amendment claims, asserting that because his claims arise from law enforcement conduct during his arrest—before his conviction and incarceration—application of the Eighth Amendment to his claims is improper. Defendants argue that claims of pretrial excessive force by law enforcement should be analyzed under the Fourth Amendment, not the Eighth Amendment.

The Court agrees with Defendants that "[a] claim that a law enforcement officer used excessive force during a stop or arrest is 'analyzed under the Fourth Amendment.'" *Barnes v. Felix*, 145 S. Ct. 1353, 1357-58 (2025) (quoting *Graham v. Connor*, 490 U.S.

4

386, 395 (1989)). The Eighth Amendment does not afford protection to parties allegedly injured during an arrest. *See Bell v. Wolfish*, 441 U.S. 520, 531 (1979). Thus, the Court recommends that summary judgment be granted in Defendants' favor on Mr. Amos's Eighth Amendment claims.

**B.     To the extent that Mr. Amos alleges Fourth Amendment claims against Defendants Kelly and Schoonover, he has established no constitutional violation.**

Mr. Amos has alleged Defendants' unconstitutional use of excessive force against him during his arrest on September 2, 2016, although he has failed to explicitly raise a Fourth Amendment claim in his Complaint. (*See generally* Doc. 1.) But in his Response to Defendants' Amended Motion for Summary Judgment, Mr. Amos asks the Court to "construe [his] claims as if he intended to bring [them] under the Fourth Amendment." (Doc. 110 at 8.)

When evaluating claims raised in a pro se plaintiff's complaint, courts should hold the pro se complaint to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (further citation omitted.) "If the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). Here, although Mr. Amos has failed to explicitly claim any Fourth Amendment violations in his Complaint, the Court liberally construes his Complaint as alleging Defendants' excessive use of force and failure to intervene in violation of the Fourth

5

Amendment. As such, the Court examines the merits of Mr. Amos's claims below under the Fourth Amendment.

**1.      Defendant Kelly's conduct did not amount to unconstitutional excessive force.**

Addressing the merits of Mr. Amos's claims, the Court turns first to Mr. Amos's allegation of excessive force by Defendant Kelly. In his Complaint, Mr. Amos alleges that Defendant Kelly "punched him in the face multiple times [and] beat him with a flashlight hitting him in the back of the head, [and] choked him as well" all "in violation of the United Constitution." (Doc. 1 ¶¶ 8, 9.) In response to Defendants' summary judgment motion, Mr. Amos asserts that Defendant Kelly's flashlight strikes to his head constitute not just excessive force but unconstitutional deadly force. (*See e.g.*, Doc. 110 at 1-4, 6, 7.) Mr. Amos also alleges in his response that during the struggle to handcuff him, Defendant Kelly "grabbed [Mr. Amos] by his hair with both hands and smash[ed] his head to . . . the doorframe" of a vehicle. (*See e.g.*, *id.* at 13, 20, 22.)

"To determine whether an officer's use of force was excessive, a court must determine whether the officer's conduct was objectively reasonable." *Standberry v. Ramsey Cnty.,* No. 23-cv-221 (DWF/DLM), 2025 WL 1645314, at *6 (D. Minn. June 10, 2025) (citing *Morgan-Tyra v. City of St. Louis*, 89 F.4th 1082, 1085 (8th Cir. 2024)). The reasonableness of an officer's force turns on "whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him." *Rogers v. King*, 885 F.3d 1118, 1121 (8th Cir. 2018). Courts do not examine the facts in a vacuum. Rather, courts must look to the totality of the circumstances to determine whether an officer's conduct was objectively reasonable. *Barnes*, 145 S. Ct. at 1358. The totality of the

circumstances includes "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer[s] or others, and whether the suspect is actively fleeing or resisting arrest." *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (quoting *Graham*, 490 U.S. at 396). When an officer has "probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others," the use of deadly force is reasonable. *Rogers*, 885 F.3d at 1121 (quoting *Liggins v. Cohen*, 971 F.3d 798, 800 (8th Cir. 2020)) (further citation omitted). Courts must evaluate the reasonableness of the force used "not with the benefit of hindsight[,]" but through the lens of a reasonable officer on the scene. *Kohorst v. Smith,* 968 F.3d 871, 876 (8th Cir. 2020) (citing *Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018)).

Both sides submitted substantial evidence to the Court. Defendants have submitted, declarations, body-worn camera ("BWC") footage, police squad vehicle footage, and police reports, and other material that they assert demonstrate the force Defendant Kelly used against Mr. Amos did not amount to a constitutional violation. (*See generally* Docs. 94, 95, 96, 97 to 97-11.) For his part, Mr. Amos has submitted a lengthy declaration and exhibits which, for the most part, include portions of the same police reports, statements, BCW footage, along with Mr. Amos's commentary on the veracity of such evidence. (*See* Docs. 111 to 111-8.) Considering all of this evidence and reasonable inferences drawn from it in Mr. Amos's favor, the Court concludes that the force used by Defendant Kelly against Mr. Amos did not amount to a constitutional violation.

Police reports from Mr. Amos's September 2, 2016 arrest set the stage and explain how law enforcement encountered Mr. Amos to begin with. Defendant Kelly and Officer

7

Miller were on routine patrol near 33rd Avenue North and Emerson Avenue North in Minneapolis around 10:00 p.m. on September 2, 2016, when the officers "spotted a black SUV [sport utility vehicle] traveling westbound on 33rd Ave N at a high rate of speed run over a center isle at 33rd Ave N and Emerson Ave N." (Doc. 94-4 at 47.) The officers followed and "attempted to stop the vehicle by activating [their] emergency lights and siren." (*Id.*; Doc. 94-2 at 21:55:09-55:36) The vehicle did not stop but sped up, and the officers initiated a "vehicle pursuit." (Doc. 94-4 at 47; Doc. 94-2 at 21:55:36.) According to Officer Miller's report, he observed the vehicle "was driving approximately 55 to 60 [miles per hour]." (Doc. 94-4 at 50.) "The vehicle continued north bound on Emerson Ave N and failed to stop at the stop sign at 34th Ave N." (*Id.* at 47; Doc. 94-2 at 21:55:45-48.) The vehicle continued north and "navigated around the roundabout located at 36th AV N and Emerson AV N[,]" and "then hit parked vehicles on the east side of Emerson AV N about mid-block on the 3600 block of Emerson AV N." (Doc. 94-4 at 50; Doc. 94-2 at 21:55:48-59.)[2] The vehicle's driver, later identified as Mr. Amos, exited the still-moving vehicle and fled on foot, heading westbound, and wearing a white t-shirt and black shorts.[3] (Doc. 94-4 at 47, 50; Doc. 94-2 at 21:55:59-56:01.)

---

[2] Unbeknownst to Defendant Kelly at the time, Mr. Amos had also struck a pedestrian who later died at the hospital. (Doc. 94-4 at 48.)

[3] Mr. Amos argues that he had good reason to flee from police based on his past "traumatic experiences" with law enforcement. (Doc. 110 at 9.) According to Mr. Amos, he was severely beaten by police in Georgia (Doc. 111-3 at 47-48; Doc. 111, 111-5 at 21), and his oldest son was killed by St. Paul Police (Doc. 111-3 at 16-17). Although the Court does not discredit Mr. Amos's past experiences, the Court's analysis of the reasonableness of Defendants' conduct focuses on the perspective of a reasonable officer on scene, not the perspective of a fleeing suspect.

8

Defendant Kelly exited his squad vehicle, put Mr. Amos's vehicle in park, and chased after Mr. Amos through residential yards. (Doc. 94-4 at 47, 50; Doc. 94-2 at 21:56:03-07.) During the foot pursuit, Defendant Kelly lost sight of Mr. Amos "for a few seconds" but caught up to him "in the area of 3616 Fremont Ave N," and "pushed him forward causing him to fall to the ground." (Doc. 94-4 at 47.)[4] Mr. Amos "got back got back up and continued running from [Defendant Kelly]." (*Id.*) Defendant Kelly then yelled "Minneapolis police stop" but Mr. Amos continued running. (*Id.*) Defendant Kelly was able to "grab onto [Mr.] Amos and attempted to stop him from fleeing," but Mr. Amos "pushed [him] away and [Defendant Kelly] lost [his] grasp[.]" (*Id.*)

At this point, Defendant Kelly, "attempted to taser [Mr.] Amos to end the foot chase." (Doc. 94-4 at 47.) Defendant Kelly "hit [Mr. Amos] with two probes initially and [Mr. Amos] continued to run around a vehicle." (*Id.*) Defendant Kelly believed he "did not have a good connection and fire[d] a second set of probes into [Mr.] Amos." (*Id.*) This time, Defendant Kelly, "believed that [he] had good connection however the taser was ineffective against [Mr.] Amos." (*Id.*) Mr. Amos then "opened up a car door that was running and occupied with three females." (*Id.*) Defendant Kelly, who at this point was the lone officer pursuing Mr. Amos, believed that Mr. Amos "was attempting to carjack the vehicle with the [occupants] still inside[.]" (*Id.*) So, Defendant Kelly "grabbed onto [Mr.] Amos" who was inside the vehicle and "attempted to call out on [his] radio" for backup.

---

[4]There is no BWC footage of Defendant Kelly's foot pursuit of Mr. Amos because, according to Defendant Kelly's police report, he did not realize that his body-worn camera had been off during their encounter. (Doc. 94-4 at 48.)

9

(*Id.*) But Defendant Kelly struggled to relay his transmission through congested radio traffic. (*Id.*)

Still without the assistance of other officers, Defendant Kelly "saw that [Mr.] Amos had both of his hands on the steering wheel and was pushing his foot on the accelerator" while a woman was still in the driver's seat, "screaming for help." (Doc. 94-4 at 47.) Based on his observations, Defendant Kelly "believed that [Mr.] Amos was attempting to drive the vehicle while [Defendant Kelly] was partially inside of the vehicle attempting to remove him." (*Id.*) Then "[w]hile fearing for [his] life and the occupants of the vehicle and with the Taser and [his] punches ineffective, [Defendant Kelly] attempted to hit [Mr.] Amos with [his] flashlight multiple times in the back of the head." (*Id.*) Even so, Defendant Kelly's "flashlight blows were also ineffective and [Mr.] Amos was able to get further into the vehicle." (*Id.*) At this point, Defendant Kelly "also got further into the vehicle and attempted to place [Mr.] Amos in a neck restraint," but he "was unable to get [his] arm around [Mr. Amos's] neck." (*Id.*) During this struggle, other officers arrived and assisted Defendant Kelly in pulling Mr. Amos out of the vehicle. (*Id.*)

Once the officers had Mr. Amos out of the vehicle and on the ground, Defendant Kelly "was able to pull [Mr. Amos's] right hand out and place a handcuff on it." (Doc. 94-4 at 48; Doc. 94-9 at 2:40-55.) But Mr. Amos "then pulled his left hand under his body preventing [Defendant Kelly] from securing" the handcuffs. (Doc. 94-4 at 48; Doc. 94-9 at 2:55-4:22) "With the assistance of another officer, [Defendant Kelly] was able to pull [Mr. Amos's] arm out and he was handcuffed." (Doc. 94-4 at 48; Doc. 94-9 at 4:22-25.) Mr. Amos claims that Defendant Kelly "grabbed [Mr. Amos] by his hair with both hands and

10

smash[ed] his head" against the vehicle's doorframe. (Doc. 110 at 20.) But Defendants' video evidence reveals no such conduct by Defendant Kelly. Nor has Mr. Amos provided any other evidence supporting his claim. Instead, Defendants' evidence shows Mr. Amos actively resisting officers' attempts to handcuff him and Defendant Kelly using his body weight to push Mr. Amos's head and neck to the pavement to overcome Mr. Amos's determined resistance. (Doc. 94-9 at 2:58-3:04; Doc. 113 at 2-3.) The evidence also shows that despite Defendant Kelly's and multiple officers' use of force, Mr. Amos continued to resist arrest. (Doc. 94-9 at 3:08-4:24.) As soon as law enforcement officers secured the handcuffs on Mr. Amos, the officers, including Defendant Kelly, stopped using force against him. (*Id*. at 4:24.)

Mr. Amos argues that Defendant Kelly's use of a flashlight to strike him was an unconstitutional use of deadly force.[5] Deadly force is reasonable "where an officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others." *Rogers*, 885 F.3d at 1121. Considering the totality of these circumstances from the perspective of the reasonable officer on the scene, the Court focuses on the information available to Defendant Kelly at moment he used deadly force

---

[5] In an excessive force claim, "deadly force is such force that creates a substantial risk of causing death or serious bodily harm." *Anderson v. Avond,* 631 F. Supp. 3d 721, 729 (D. Minn. 2022) (quoting *Church v. Anderson*, 249 F. Supp. 3d 963, 968 (N.D. Iowa 2017), *aff'd,* 898 F.3d 830 (8th Cir. 2018)) (cleaned up). Defendants concede that Defendant Kelly's flashlight strikes against Mr. Amos constitute deadly force. (Doc. 93 at 17-19 (citing Doc. 94-10 at 12).) Determining whether that is constitutionally correct under these circumstances is unnecessary because even under the deadly force standard, Defendants are entitled to summary judgment on Mr. Amos's claim.

against Mr. Amos. *See id.* (citing *Loch*, 689 F.3d at 965). The evidence before the Court shows that when Defendant Kelly struck Mr. Amos with the flashlight, he had probable cause to believe Mr. Amos posed a threat of serious physical harm to Defendant Kelly and others. Defendant Kelly had just pursued Mr. Amos in a high-speed vehicle chase through a residential area that ended when Mr. Amos crashed his vehicle into parked cars, killing an innocent bystander along the way. After continuing the chase on foot, Defendant Kelly was the lone officer on the scene attempting to remove Mr. Amos from an occupied, running vehicle that Mr. Amos was attempting to carjack. Defendant Kelly's previous attempts to stop Mr. Amos—shoving and punching him, and twice using a taser against him—had had no effect. Acting alone and unsure if any backup was on its way, Defendant Kelly had reasonable grounds to believe that Mr. Amos would drive off in the carjacked vehicle with Kelly half-inside the driver's door and the occupants—including children— still trapped in the vehicle. Under these circumstances, it was not unreasonable for Defendant Kelly to use the force he did. Accordingly, the Court concludes that summary judgment should be granted for Defendant Kelly's on Mr. Amos's excessive force claim.

2. **Defendant Kelly's conduct did not amount on an unconstitutional failure to intervene.**

The Court next addresses Mr. Amos's claim that Defendant Kelly failed to intervene in the unconstitutional conduct of the other officers who assisted with Mr. Amos's arrest. Defendants do not dispute that police officers have a duty to intervene in the unconstitutional conduct of fellow officers, and a failure to do so may be actionable under § 1983. *Putnam v. Gerloff,* 639 F.2d 415, 423 (8th Cir. 1981) (citation omitted). A police

officer who fails to act to prevent the use of excessive force may be held liable "where (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009) (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)).

Mr. Amos alleges in his Complaint that Defendant Kelly "fail[ed] to intervene to prevent the misuse of force[.]" (Doc. 1 ¶ 9.) But Defendants have submitted video and documentary evidence to the Court showing that Defendant Kelly neither observed nor had reason to know that excessive force was being used while officers tried to subdue and handcuff Mr. Amos. According to Defendant Kelly's Declaration, "[d]espite multiple officers around him, Mr. Amos never stopped struggling until both handcuffs were finally applied . . . [t]hroughout the struggle, [he] did not observe any officer applying what [he] knew to be excessive force." (Doc. 96 ¶¶ 14, 15.) Consistent with his Declaration, Defendant Kelly's police report describes a protracted struggle as officers tried to remove Mr. Amos from his carjacking victim's vehicle and then handcuff him. (Doc. 94-4 at 47-48.) And body-worn camera footage corroborates Defendant Kelly's report showing Mr. Amos's continued resistance as multiple officers tried to remove him from the vehicle and handcuff him. (*See generally* Doc. 94-9.) While Mr. Amos continued to resist arrest, it was reasonable for officers to use force to stop him. *See Kohorst*, 968 F.3d at 876 ("An officer is entitled to use the force necessary to effect an arrest where a suspect at least appears to be resisting.") (cleaned up). And when officers finally secured handcuffs on Mr. Amos,

13

their use of force against him ceased. (*See id.*) Based on this evidence, the Court finds there was no unconstitutionally excessive force in which Defendant Kelly failed to intervene.

### 3. Mr. Amos has established no constitutional violation by Defendant Schoonover.

The Court next addresses Mr. Amos's constitutional claims against Defendant Schoonover. In his Complaint, Mr. Amos alleges that Defendant Schoonover failed to intervene in other officers' unconstitutional conduct. (Doc. 1 ¶ 9.) He also claims, in his response to Defendants' summary judgment motion, that Defendant Schoonover attempted to "cover-up" an alleged violation by destroying evidentiary photos of officers' injuries that he took during the use-of-force internal investigation. (Doc. 110 at 17.)

Mr. Amos's failure to intervene claim against Defendant Schoonover fails at the start because the Court has already concluded that there is insufficient evidence to establish a reliable inference that any officer used excessive force against Mr. Amos while trying to arrest him. But beyond that, Defendants have provided uncontroverted evidence that Defendant Schoonover was not present when other officers used force to handcuff Mr. Amos. (Doc. 94-7 at 10; *see also* Doc. 95.) The Court therefore concludes that Defendant Schoonover cannot be held liable for failing to intervene when there was no excessive force used against Mr. Amos, and he was not present at any time that force was used against Mr. Amos. Accordingly, summary judgment should be granted for Defendant Schoonover on Mr. Amos's failure to intervene claim.

As for Mr. Amos's suggestion of a coverup Defendant Schoonover, Defendants have provided evidence that Defendant Schoonover's loss of photos was at most a

negligent mistake due to technological mishaps or ineptitude. (Doc. 94-4 at 82; Doc. 95 ¶ 13.) Mr. Amos has presented no evidence to the Court to create a reasonable inference that Defendant Schoonover intentionally or recklessly failed to investigate any alleged violation. *Accord Brockington v. City of Sherwood, Ark.*, 503 F.3d 667, 672 (8th Cir. 2007) ("Negligent failure to investigate does not violate due process."). Indeed, the missing photos were of *officers'* injuries, making it hard to conjure any advantage to Defendants from hiding those images. The Court concludes that summary judgment should be granted in Defendant Schoonover's favor on Mr. Amos's failure to investigate claim.

## II.     QUALIFIED IMMUNITY.

To survive a motion for summary judgment on qualified immunity grounds, Mr. Amos "must assert a violation of a constitutional right[,] demonstrate that the alleged right is clearly established[,] [and] raise a genuine issue of fact as to whether [Defendants] would have known that [their] alleged conduct would have violated [Mr. Amos's] clearly established right." *Id.* (quoting *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (cleaned up)). In a qualified immunity analysis, the threshold question is whether the evidence Mr. Amos presents establishes that Defendants' conduct violated a constitutional right. *Id.* (citing *Scott*, 550 U.S. at 377). As discussed above, Mr. Amos established no constitutional violation. Therefore, he cannot overcome a qualified immunity defense on summary judgment. Because the evidence presented does not establish any violation, this Court need not and will not proceed with the qualified immunity analysis. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). For all the reasons above, the Court concludes

that summary judgement should be granted in Defendants' favor and this case be dismissed with prejudice.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Defendants Ryan Kelly and Kurtis Schoonover's Amended Motion for Summary Judgement (Doc. 91) be **GRANTED**; and

2. All claims against Defendants Ryan Kelly and Kurtis Schoonover be **DISMISSED WITH PREJUDICE**.

Date: July 15, 2025

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).